IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHLEEN BOHACEK,

        Plaintiff,               No. CIV S-04-0939 GGH

    vs.

CITY OF STOCKTON, et al.,

        Defendants.       <u>ORDER</u>

_____/

        Previously pending on this court's calendar for August 25, 2005 was defendant City of Stockton's ("City") motion for summary judgment. Clifford Campbell appeared on behalf of defendant. Roslyn Simmons appeared for plaintiff. Having reviewed the filings and heard oral argument, the court now issues the following order.

I. <u>BACKGROUND</u>

        This action is proceeding on the amended complaint, filed July 16, 2004. Plaintiff is Kathleen Bohacek, the mother of a minor child. Plaintiff claims that while her son was enrolled in a summer camp program offered by the City of Stockton in June 2003, the City did not make reasonable accommodation for her son's peanut allergy by equipping its day camp with Epinephrine to forestall anaphylaxis from peanut exposure. After plaintiff enrolled at the camp and arrived for the first day of camp, defendants refused to allow plaintiff to participate in the

1

program because of plaintiff's disability, unless AC's mother remained at the camp. Defendants' reason at the time was that the children eat their lunch on location outside a museum, that they all eat together in the same area and the staff had no control over what was brought to camp, and they did not have the facilities to lock up the EpiPen Jr. The amended complaint also alleges that defendants refused to train staff in the use of the Epipen Jr. which is injected during anaphylactic shock.[1]

Claims remaining after plaintiff did not oppose defendant's motion for judgment on the pleadings are one, two and four, for violation of the ADA, violation of the Rehabilitation Act, and violation of California's Disabled Persons Act. Plaintiff seeks injunctive relief and damages.

II. DEFENDANT'S OBJECTIONS TO PLAINTIFF'S OPPOSITION AND EVIDENCE[2]

Defendant objects to portions of Rita Bohacek's (AC's grandmother) affidavit on various grounds. Plaintiff has not responded to these objections. In regard to the affidavit at issue, none of the statements objected to by defendant has been considered in deciding the instant motion. To the extent the statements are irrelevant, defendant's objections are sustained. Other statements in the affidavit objected to by defendant have not been considered as they are inconsequential to this decision.

The declaration of defendant's counsel indicates that defendant was not served with exhibits attached to the declaration of James Koester, filed June 20, 2005. Nor were these

\\\\\\

---

[1] It is undisputed that AC has never suffered from anaphylactic shock. Bohacek Depo. at 58:14-16. The opposition states that AC has fallen into anaphylactic shock but plaintiff provides no evidence in support of this assertion. Oppo. at (unnumbered) p.12, referring to Rita Bohacek Affidavit, without page number. This affidavit makes no such statement.

[2] Defendant also filed objections to the opposition, and moved to strike it because plaintiff's counsel did not sign it. It appears that counsel did not sign the points and authorities or the statement of disputed material facts. Although technically a violation of Fed. R. Civ. P. 11(a), plaintiff's counsel redeemed herself at hearing by appearing to argue the points raised in the opposition, and therefore it has been considered in deciding the motion.

1   exhibits attached to the declaration filed with the court and therefore could not have been

2   considered.

3   III.  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

4          Summary judgment avoids unnecessary trials in cases with no disputed material

5   facts.  See Northwest Motorcycle Ass'n v. United States Dep't of Agric., 18 F.3d 1468, 1471

6   (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to require

7   submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

8   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  Two steps

9   are necessary.  First, according to the substantive law, the court must determine what facts are

10  material.  Second, in light of the appropriate standard of proof, the court must determine whether

11  material factual disputes require resolution at trial.  See id. at 248, 106 S. Ct. 2510.

12         When the opposing party has the burden of proof on a dispositive issue at trial, the

13  moving party need not produce evidence which negates the opponent's claim.  See e.g., Lujan v.

14  National Wildlife Fed'n, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990).  When the opposing

15  party has the burden of proof, the moving party need only point to matters which demonstrate the

16  absence of a genuine material factual issue.  See Celotex v. Cattret, 477 U.S. 317, 323-24, 106 S.

17  Ct. 2548, 2553 (1986).

18          If the moving party meets its burden, the burden shifts to the opposing party to

19  establish genuine material factual issues.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

20  475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).[3]  The opposing party must demonstrate that

21  disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing

22  law, see Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; T.W. Elec. Serv., Inc. v. Pacific Elec.

23

24          [3]  The nonmoving party with the burden of proof  "must establish each element of his
     claim with significant probative evidence tending to support the complaint."  Barnett v. Centoni,
25   31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an
     essential element of the nonmoving party's case renders all other facts immaterial, and entitles
26   the moving party to summary judgment.  Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

1  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the

2  parties' differing versions of the truth require resolution at trial, see T.W. Elec., 809 F.2d at 631.

3  The opposing party may not rest upon the pleadings' mere allegations or denials, but must present

4  *evidence* of specific disputed facts.  See Anderson, 477 U.S. at 248, 106 S. Ct. 2510.[4]  Conclusory

5  statements cannot defeat a properly supported summary judgment motion.  See Scott v.

6  Rosenberg, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

7          The court does not determine witness credibility.  It believes the opposing party's

8  evidence, and draws inferences most favorably for the opposing party.  See Anderson at 249, 255,

9  106 S. Ct. at 2510-11, 1513.  Inferences, however, are not drawn out of "thin air," and the

10  proponent must adduce evidence of a factual predicate from which to draw inferences.  American

11  Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

12  dissenting) (citing Celotex, 477 U.S. at 322, 106 S. Ct. at 2552).

13          If reasonable minds could differ on material facts at issue, summary judgment is

14  inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).  On the other

15  hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

16  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct.

17  1356 (citation omitted).  In that case, the court should grant summary judgment.

18  IV.  DISCUSSION

19      A.  Americans With Disabilities Act ("ADA")

20          Because plaintiff is bringing an action for discrimination and denial of access for

21  participation in or denial of the benefits of the services, programs, or activities of a public entity,

22  her cause of action is pursuant to Title II of the ADA, 42 U .S.C. § 12132.  Unlike Title I of the

23  ADA, Title II's remedies are tied not to Title VII of the Civil Rights Act but to § 505 of the

24  _____

25      [4] A verified complaint may be used as an affidavit in opposition to the motion.
Schroeder v McDonald, 55 F. 3d 454, 460 (9th Cir. 1995); McElyea v. Babbitt, 833 F.2d 196,
26  197-98 (9th Cir. 1987) (per curiam).

4

1   Rehabilitation Act, 29 U.S.C. § 794a.  See 42 U.S.C. § 12133 (Title II) ("The remedies,

2   procedures, and rights set forth in  section 794a of Title 29 [the Rehabilitation Act] shall be the

3   remedies, procedures, and rights this subchapter provides to any person alleging discrimination on

4   the basis of disability in violation of section 12132 of this title.").  Section 505, in turn,

5   "incorporates the remedies of Title VI of the Civil Rights Act of 1964.  29 U.S.C. § 794a(a)(2)."

6   Armstrong v. Davis, 318 F.3d 965, 974 (9th Cir.2003) (emphasis removed).

7          The ADA states in pertinent part:  "Subject to the provisions of this subchapter, no

8   qualified individual with a disability shall, by reason of such disability, be excluded from

9   participation in or be denied the benefits of the services, programs, or activities of a public entity,

10  or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To allege a prima facie

11  case under the ADA, plaintiff must allege (1) he is a qualified individual with a disability; (2) he

12  was excluded from participation in or otherwise discriminated against with regard to a public

13  entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason

14  of his disability.  Lovell v. Chandler,  303 F.3d 1039, 1052 (9th Cir. 2002); see also Duffy v.

15  Riveland, 98 F.3d 447, 455 (9th Cir. 1995).  Plaintiff also must allege such discrimination was

16  intentional.  See Duvall v. County of Kitsap, 260 F.3d 1124, 1138-40 (9th Cir. 2001) (to establish

17  ADA claim, plaintiff must show he suffered intentional discrimination due to a disability).

18         Regarding the first element of a prima facie case, the ADA defines the term

19  "disability" with respect to an individual as "a physical or mental impairment that substantially

20  limits one or more of the major life activities of such individual ...."  42 U.S.C. § 12102(2)(A).

21         It is undisputed that AC has a medical condition.  The issue to be decided here is

22  whether AC's peanut allergy substantially limits life's major activities such that it is a disability

23  recognized by the ADA.  AC has avoided eating foods containing peanut ingredients his

24  \\\\\

25  \\\\\

26  \\\\\

5

1   whole six years of life except the one time where his peanut allergy was first discovered at one

2   year of age.[5]

3            Rather than affecting AC's ability to breathe as presented by the parties, the court

4   views the question as one of whether Alexander's limitation on his ability to socialize is a major

5   life activity.  The undersigned understands that the parties have not briefed the issue in this way;

6   nevertheless, the undersigned reviews it as such for two reasons.  Less importantly, after nearly

7   sixteen years on the bench, the undersigned recognizes that the parties are never shy about raising

8   new arguments on appeal, and more often than not, the arguments are permitted.  And, of course,

9   the judge below will have "terribly erred" because he did not address the argument that is

10  belatedly addressed on appeal.  More important than a frustrating reversal, however, is the fact

11  that once an issue is tendered, the undersigned will ultimately decide it in a manner in which he

12  believes correct.  While always guided by the parties beliefs in this regard, the undersigned does

13  not abdicate his judgment.

14            McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999) held that

15  interacting with others, like walking and breathing, is a major life activity.  Mere trouble getting

16  along with others is not considered sufficient to qualify as a substantial limitation.  Id. at 1235.

17  "[A] plaintiff must show that his 'relations with others were characterized on a regular basis by

18  severe problems, for example, consistently high levels of hostility, social withdrawal, or failure to

19  communicate when necessary.'" Id.

20            The major life activity involved here is not "breathing" in that such an activity is

21  only *potentially* affected by the peanut allergy.  Again, the ADA defines disability as an

22  impairment "that substantially limits" a major life activity; it is not an impairment that

23  "potentially" limits a major life activity.  Unless AC ingested or otherwise contacted a peanut

24  substance, the facts show that his breathing was not limited at all.  Rather his real limitation,

25  _____

26       [5]  Alexander was exposed to peanuts two other times but did not ingest them.

1   assuming it substantial for the moment, are the places he can go without active supervision and

2   monitoring.  That is absent the supervision or monitoring, he will not be able to go to certain

3   places—hence he will be excluded from persons and activities at this time in his life he might

4   otherwise desire to contact, or in which he would like to engage.  This is a limitation of

5   socialization.

6          Similarly, the parties alternatively asserted that AC's impairment was eating.  It is

7   not.  AC can eat as much as he wants, when he wants and what he wants—as long as peanuts or

8   foods with peanut derivatives are not involved.  He is not tasked, for example, with having foods

9   ingested through a tube, or having to eat at very frequent intervals.  Although AC's peanut allergy

10  problem condition is very serious and *potentially* life threatening, to say that the ADA may be

11  invoked because one cannot enjoy the full panoply of foods trivializes the Act.  However, a loss of

12  socialization opportunities because of such an allergy could well constitute a major life

13  impairment depending on whether the limitation was substantial.

14         According to the amended complaint, AC was not excluded from the day camp

15  because he refused to eat food containing peanuts, or because he had problems breathing.  Rather,

16  he was excluded because the camp did not want to provide an environment free of peanut

17  allergens.  The City did not want the responsibility of administering the Epipen if he ingested

18  peanuts or indicated breathing problems, and did not want to train its staff in the use of the

19  Epipen.  Am. Compl. at ¶¶ 16, 17.

20         There is no evidence that plaintiff was excluded from any other day camp, or that

21  he was excluded from other types of socialization.  His mother testified that there was no other

22  activity that kids can do which he was prevented from doing, other than eating peanuts.  Bohacek

23  Depo. at 24:21-25.  Examples of other activities in which he engaged were swimming, riding a

24  bike, playing with his brother, playing basketball, video games, and playing in the back yard.  (Id.

25  at 24:11-20.)  AC is able to attend school and care for his allergy by bringing his own lunch and

26  not sharing food with other children.  Id. at 28.  He has never been absent due to this allergy and

7

1    has never had an allergic reaction at school.  Id.  The evidence presented here indicates that AC

2    was not substantially limited in the major life activity of socializing.

3            Even if this court were to characterize the major life activity here as eating or

4    breathing, peanut allergies have been found to not substantially limit these activities.  Land v.

5    Baptist Medical Center, 164 F.3d 423, 425 (8th Cir. 1999).  In that case, the court found that a

6    peanut allergy affected the child's eating and breathing only a little bit, even though she had

7    suffered two allergic reactions during which her speaking and breathing were hampered, and for

8    which medication was necessary.  Despite being refused day care services, the child was found not

9    to have a disability under the ADA.  Id. at 424.  See also Dose v. Buena Vista University, 229 F.

10   Supp. 2d 910 (N.D. Iowa 2002) (blood clotting condition does not substantially limit plaintiff's

11   ability to breathe under ADA if he avoids activities that require heavy exertion); Gits v.

12   Minnesota Mining and Manufacturing Co., 2001 WL 1409961 (D. Minn. 2001) (multiple

13   chemical sensitivities condition not a disability because it does not substantially limit plaintiff's

14   ability to breathe); Zirpel v. Toshiba Am. Info. Sys., Inc., 111 F.3d 80, 81 (9th Cir. 1997) (panic

15   attacks do not substantially limit major life activities even though they hamper speaking and

16   breathing).

17           In plaintiff's cited case, Fraser v. Goodale, 342 F.3d 1032, (9th Cir. 2003), the

18   Ninth Circuit held that diabetes was a physical impairment under the ADA, and eating was a

19   major life activity.  Id. at 1040.  The court limited this holding to specific situations such as

20   diabetes.  The court stated that someone who can't eat chocolate cake is not limited in a major life

21   activity; however, in apparent dicta, it stated,  "[o]n the other hand, peanut allergies *might* present

22   a unique situation because so many seemingly innocent foods contain trace amounts of peanuts

23   that could cause severely adverse reactions."  Id. (emphasis added.)  Furthermore, this dicta by the

24   court was limited to the question of whether eating was a major life activity.  It went no further to

25   address the issue presented here, which is whether this peanut allergy substantially limits a major

26   life activity.

1    Therefore, whether the characterization is socializing, eating, or breathing, AC

2  does not have a disability because there is no substantial limitation on his major life activities.

3    B.  Rehabilitation Act

4    Section 504 of the Rehabilitation Act provides that: "No otherwise qualified

5  individual with a disability in the United States...shall, solely by reason of her or his disability, be

6  excluded from the participation in, be denied the benefits of, or be subjected to discrimination

7  under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.   The

8  purpose of the Rehabilitation Act is to assure that handicapped people receive evenhanded

9  treatment in relation to nonhandicapped people.  Traynor v. Turnage, 485 U.S. 535, 548 (1988);

10  see Lue v. Moore, 43 F. 3d 1203 (8th Cir. 1994).

11    "The standards used to determine whether an act of discrimination violated the

12  Rehabilitation Act are the same standards applied under the Americans with Disabilities Act

13  ('ADA')."  Coons v. Secretary of Treasury, 383 F.3d 879, 884 (9th Cir.2004); 29 U.S.C. § 794(d);

14  McLean v. Runyon, 222 F.3d 1150, 1153 (9th Cir.2000).  Therefore, under the inquiry set forth in

15  regard to the ADA, the court finds that AC was not substantially limited in any major life activity

16  and was not under a disability as defined by the Rehabilitation Act.

17    C.  California Law

18    Defendant also moves for summary judgment on plaintiff's claim under

19  California's Disabled Persons Act.  Because judgment will be entered on the federal claims, the

20  court declines to exercise jurisdiction over the remaining state law claims.  A district court has

21  discretion whether to retain supplemental jurisdiction over state law claims.  Acri v. Varian

22  Assoc., Inc., 114 F.3d 999, 1000 (9th Cir.1997).

23  \\\\\

24  \\\\\

25  \\\\\

26  \\\\\

1   V.   <u>CONCLUSION</u>

2          For the reasons stated within this opinion, IT IS ORDERED that:

3          1.  Defendant's motion for summary judgment, filed April 8, 2005, is granted.

4          2.  The Clerk is directed to enter judgment for defendant.

5          3.  Plaintiff's supplemental state law claims are dismissed without prejudice.

6   DATED: 10/26/05

                                        /s/ Gregory G. Hollows
7                                       _____
                                        GREGORY G. HOLLOWS
8                                       U. S. MAGISTRATE JUDGE

    GGH/076
9   Bohacek939.sj.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26